# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**ROBERTA WILSON,**

   **Plaintiff,**

v.                   Case No: 6:06-cv-519-Orl-DCI

**COMMISSIONER OF SOCIAL SECURITY,**

   **Defendant.**

## MEMORANDUM OF DECISION

Roberta Wilson (Claimant) appeals the Commissioner of Social Security's final decision denying her application for disability benefits. Docs. 1; 47. Claimant argues that the Administrative Law Judge (ALJ) erred by: 1) according the opinion of Dr. David Owen "lesser weight" and the opinion of Dr. Donald Goldman "greatest weight"; and 2) finding her testimony concerning her pain and limitations not entirely credible. Doc. 47 at 23. In addition, Claimant asserts that she was prejudiced by an invalid waiver of counsel. *Id*. Finally, Claimant asserts that this case should be reversed for an award of benefits due to its 16-year journey through the administrative and judicial process. *Id*. For the reasons that follow, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

### I.  Procedural History.

This case began over 16 years ago when, on December 6, 2001, Claimant protectively filed for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI). Doc. 47 at 1. Claimant alleged a disability onset date of September 11, 2001; on that date Claimant was a passenger in a car involved in an accident, which was the genesis of her back injuries that are at

issue in this proceeding. Claimant's application had a long journey through the administrative and judicial process, and ultimately Claimant was deemed disabled from September 24, 2001 through June 12, 2003, and again beginning on January 1, 2007 (assumed to be continuing, and through at least the date of the last administrative decision, December 5, 2014). R. 15; 26. Thus, the issue now before the Court concerns Claimant's alleged disability during a finite period (June 13, 2003 to December 31, 2006), book-ended by periods of disability. *Id*.

The specifics of the procedural history of this matter are set forth in detail in the parties' joint procedural history and factual basis, to which no party objected. Doc. 47; *see also* Doc. 28 at 2-3 (the Court's Scheduling Order, requiring the parties to create a joint procedural history and factual basis and allowing them to note any unresolved objections therein). In sum, Claimant's initial December 2001 filing was based upon lower back pain, leg pain, and numbness associated with her car accident. Doc. 47 at 1. That application was denied, and Claimant requested a hearing. *Id*.

At her first hearing, on June 12, 2003, Claimant was represented by counsel and testified. *Id*. On January 21, 2004, the ALJ issued a partially favorable decision, finding Claimant's testimony credible in that she was disabled due to severe pain from September 24, 2001 to June 12, 2003 (the date of the hearing), but finding Claimant's testimony not credible for any further period of disability, because Claimant had regained functional capacity for light work. *Id*. at 1-2. Subsequent requests for review were denied, as were additional applications for benefits, and Claimant filed this judicial action. *Id*. at 2; Doc. 1. In 2007, the Court granted the Commissioner's motion for remand, due to missing exhibits. Doc. 17. The Appeals Council then entered an order vacating only the unfavorable portion of the decision and remanding to the ALJ for further proceedings. Doc. 47 at 2.

On January 14, 2008, the ALJ held a second hearing, during which Claimant proceeded *pro se* and testified. *Id*. On March 6, 2008, the ALJ found that Claimant was not disabled from June 13, 2003 through the date of that decision. *Id*. Claimant filed a request to review that decision, and the Appeals Council initially issued a proposed order to vacate the ALJ's decision, ultimately processing a remand for further proceedings and a new decision for the period beginning June 13, 2003, as to Claimant's various applications. *Id*. at 2-3.

Accordingly, on May 2, 2011, Claimant appeared *pro se* and testified at a third hearing. *Id*. On May 20, 2011, the ALJ issued a partially favorable decision, dismissing the SSDI application and finding that Claimant was disabled for purposes of SSI as of June 1, 2010. *Id*. Claimant requested review, and the Appeals Council again remanded the matter for further proceedings, affirming the decision that Claimant was disabled beginning on June 1, 2010, but vacating the ALJ's decision that Claimant was not disabled from June 13, 2003 through May 31, 2010. *Id*.

Thus, on November 13, 2014, Claimant appeared at her fourth hearing. *Id*. There, the ALJ received the testimony of Claimant, proceeding *pro se*, as well as that of Dr. Goldman, Dr. Owens, and a vocational expert. *Id*. at 3-4. On December 5, 2014, the ALJ issued a partially favorable decision, finding that Claimant was not disabled during the three-and-a-half year period from June 13, 2003 to December 31, 2006, and that Claimant became disabled on January 1, 2007. *Id*. at 4. Claimant requested review, which was denied. *Id*. Thus, this became the final decision of the Commissioner. In November 2016, the Commissioner requested that the Court vacate the remand order and docket the case, and the Court did so following the issuance of a un-objected-to Report recommending the re-opening of this case. Docs. 22; 26; 27. On March 8, 2018, the Court held a

hearing on this matter and took argument from the Commissioner and Claimant, represented by counsel. The matter, being fully briefed (Doc. 47), it is ripe for adjudication.

II.     **The ALJ's Decision.**

In the ALJ's December 5, 2014 decision, the ALJ found that Claimant had the following severe impairments: degenerative disc disease of the lumbar spine status post motor vehicle accident in 2001, chronic obstructive pulmonary disorder (COPD), and osteoarthritis. R. 18. The ALJ found that, prior to January 1, 2007, Claimant had a residual functional capacity (RFC) to perform less than a full range of light work as defined by 20 C.F.R. §§ 404.1567(b); 416.967(b).[1] R. 26. Specifically, the ALJ found that Claimant could perform light work but "was limited to frequent use of her hands, and occasional bending." *Id.* The ALJ, relying on the VE's testimony, found that Claimant was capable of performing her past relevant work prior to January 1, 2007. R. 24-25. Therefore, the ALJ found that Claimant was not disabled prior to January 1, 2007. *Id.*[2] However, the ALJ found "that beginning on January 1, 2007, the claimant's allegations regarding

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b); 416.967(b).

[2] It is unclear why the ALJ repeatedly referenced Claimant not being disabled prior to January 1, 2007 – with no reference to the fact that the Commissioner deemed Claimant disabled from September 24, 2001 to June 13, 2003. In fact, the ALJ went so far as to state that "I do not believe the exams support going back to 2001" when discussing whether Claimant was disabled due to her severe impairments, even though it is uncontroverted that Claimant was disabled from September 24, 2001 to June 13, 2003. R. 25. As was discussed at the hearing, the Court is concerned that the ALJ seemed to ignore the prior disability determination at times, for example relying on evidence from the initial period of disability weighing against Claimant's assertions of pain and limitations, but not discussing the evidence that necessarily existed to support that initial period of disability.

her symptoms and limitations are generally credible." R. 24. Thus, the ALJ found that Claimant was disabled beginning on January 1, 2007. R. 24-25. At issue is the finite period from June 13, 2003 to January 1, 2007; the period for which the Commissioner has denied Claimant's applications for disability.

### III. Standard of Review.

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The district court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## IV. Analysis.

### A. The ALJ's Credibility Determination

Claimant argues that the ALJ failed to provide sufficient, valid reasons justifying the credibility finding. Doc. 47 at 37. In particular, the ALJ found Claimant's allegations of pain and limitations credible as to the period after January 1, 2007, but not prior to that date.[3] Claimant asserts that the ALJ's rationale failed to establish why Claimant was not credible during this interim period (June 13, 2003 to December 31, 2006), when Claimant's conditions had not changed. *Id*. Claimant contends that the nature of her treatment and the existence of gaps in treatment was due to a lack of funds to obtain medical care, and that it was improper for the ALJ to discredit Claimant's testimony due to a move from Florida to Virginia and back during that interim period because her family moved due to her husband's loss of his job in Florida and the prospect of his employment in Virginia. *Id*. at 38-39.

The Commissioner argues that the ALJ properly considered Claimant's subjective complaints of disabling symptoms, together with the other evidence, in assessing Claimant's RFC during the interim period in question. *Id*. at 39. According to the Commissioner: (1) the medical evidence of record fails to support Claimant's allegations of disabling conditions; (2) Claimant's "routine and conservative" treatment during the interim period undermines Claimant's allegations; (3) the ALJ did not "unduly rely" on the gap in treatment during the interim period; (4) the ALJ did not "unduly rely" on Claimant's activities, including her move. *Id*. at 40-42. Thus, the Commissioner asserts that the ALJ's credibility decision was supported by substantial evidence. The Commissioner's argument is without merit.

---

[3] Again, the Commissioner did find Claimant's allegations credible from September 24, 2001 to June 12, 2003, but that prior period of disability was not further discussed by the ALJ, although it constituted a portion of the full record before the ALJ.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id.* at § 404.1529(c)(1)-(3). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *See Foote*, 67 F.3d at 1562.

Claimant appeared and testified at four hearings in this case. It is undisputed by the parties, and was confirmed at the hearing in this matter, that the ALJ was required to consider the record as a whole in making her determination. Claimant's testimony at each of her four hearings is part of the record in this case, and should have been considered by the ALJ. Claimant's testimony at each of those hearings was summarized by the parties in the un-objected-to Statement of Facts:

> **Hearing #1:** [Claimant] appeared with the assistance of counsel at the June 12, 2003 hearing before ALJ Danziger. (Tr. 308-28). She testified that she did not undergo surgery for her back because "they couldn't guarantee that it . . . it would

help me." (Tr. 315). Instead, she underwent other treatments, including injections, which did not help. (Tr. 316). She was prescribed Darvocet for pain, which she continued to take twice a day to alleviate pain. (Tr. 317). She had not yet taken Darvocet that day and was in pain at a level of 7/10. (Tr. 317-18). During the hour drive to the hearing, she had to keep changing her position. (Tr. 318). She is able to drive to the grocery store and do cooking, housecleaning, and grocery shopping. (Tr. 319). However, when doing housework, "I have a lot of pain, where I have to stop doing my housework and either sit down or go . . . lay down for an hour or two." *Id.* She explained, "I try to do a little bit of housework" but her husband does the laundry. (Tr. 321).

[Claimant] testified that walking increased her pain. (Tr. 320). Her pain extended into her right leg. *Id.* There is no point during the day when she is not in pain. (Tr. 321). She is able to lift ten pounds, and sit for up to one hour. (Tr. 322). Bending causes pain. (Tr. 323). Her only hobby is grooming her miniature dachshund, and she is able to operate a vacuum. (Tr. 323-24). She did not have health insurance. (Tr. 323).[4]

**Hearing #2:** [Claimant] appeared *pro se* and testified at the January 14, 2008 hearing before ALJ Thomson . . . Regarding her treatment, [Claimant] explained that she saw nurse practitioner Sullivan at the community health center instead of Dr. Laws because she could not afford the doctor. (Tr. 890). Regarding her medications, such as Flexeril, [Claimant] stated that it "helped some," but later she testified that it did "not really" help with the muscle spasms, although Tylenol helps with pain. (Tr. 891, 899).

[Claimant] explained that there was a gap in her medical records and treatment between September 2005 and February 2007 because she did not have any money at that time, her husband "only had a part-time job," "I was going around to clinics to try to get in" and "I was calling all the clinics." (Tr. 894-95). However, she had difficulty finding a provider based on the county she lived in, and was in the process

---

[4] In an August 24, 2007 letter to the hearing office, [Claimant] stated that she is unable to obtain counsel "because of the Judge assigned to my case" and "because there is not enough medical updates to win my case." (Tr. 67). She explained that, "They want a lot of test done (another MRI, xrays and scans). I have no medical insurance and cannot afford these tests . . . . I can have these test done at the clinic but I cannot afford it. Everyone wants their money up front. The only income we have is my husband's social security . . . [$]920.00 per month." *Id*. In a September 28, 2007 written statement to ALJ Thompson, Ms. Wilson stated:

> The reason I haven't been back to Dr. Abiera (Parkway Medical) is because I could not afford to keep going to him because my medical insurance ran out and he couldn't do anything more for me except give me pain medication at $50 a visit. The next step would be surgery or more injections which didn't help at all.

(Tr. 337).

of attempting to qualify for reduced cost health services through the hospital. (Tr. 901-02). She was also unable to obtain medications during this time, but was using Aleve and Tylenol for her pain. (Tr. 895-96). She also did not have the funds for MRI imaging. (Tr. 901).

[Claimant] testified that standing half an hour makes her back pain worse, and then she has to switch positions. (Tr. 900). Using the vacuum cleaner and bending to do laundry also hurt her back. *Id.* She does "light housekeeping" such as "dusting and dishes" during the day, reads, and will "try to walk a little bit, [] to keep exercising" three times a day; however, she gets out of breath when walking less than half a mile. (Tr. 906). She is able to lift and carry, on a routine basis, "[m]aybe about 10 pounds" and can sit in one position for 30 minutes before having to alternate positions. (Tr. 909). She will alternate positions, alternate between hot and cold packs, and lie down to relieve pain from sitting. (Tr. 909-10). Her son lives next door, and once a month she will visit family who lives 20 miles away, but they "[j]ust sit there and talk." (Tr. 907-08). She will drive up to five miles to the store, but her husband does most of the driving. (Tr. 908).

**Hearing #3:** [Claimant] appeared *pro se* at the May 2, 2011 hearing, again before ALJ Thompson. (Tr. 793-823). . . . [Claimant] testified that she had been unable to work due to back and leg pain since the 2001 car accident. (Tr. 803). She explained that although she discussed surgery with Dr. Tweed, "he said there was no guarantee that if I had the surgery, I would be any better. It could have made it worse, so we went with the treatments" including injections, which did not help at all. (Tr. 804-06). [Claimant] explained that she saw Dr. Dalley in Virginia because it was the only clinic "I could get in." (Tr. 813). She was prescribed Tylenol with Codeine, which she continued to take, but the medication made her sleepy. (Tr. 813-14). She stopped seeing Dr. Dalley when she was able to obtain medical insurance. (Tr. 814).

[Claimant] agreed that her back was being "helped somewhat" by Tylenol with Codeine, but noted she started having "arthritis really bad in my hands" starting "[a] couple of months ago." (Tr. 818) . . . .[5]

---

[5] In her July 29, 2012 written statement to the Appeals Council, [Claimant] stated:

> [The ALJ] said that I went without treatment for a couple of years. That is true I had no money and no medical coverage to see a dr. [sic] I had to rely on over the counter medication to easy my pain . . . . We moved to [Virginia] because we lost our home and car because we couldn't afford to make the payments[.] We moved back here and lived with my son. My husband got a part time job and I finally got into a clinic so I could afford my medication. Most of the time the Dr. gave me the advair and inhalers so I didn't have to pay for them. I only had to pay for the Tylenol with [codeine] which he put me on and I still take.

(Tr. 56-57).

> **Hearing #4:** [Claimant] appeared *pro se* and testified at the November 13, 2014 hearing, before ALJ McGarry . . . . [Claimant] testified that her back pain made it difficulty [sic] for her to bend, lift anything or walk, and she has to take pain pills so she can do her chores. (Tr. 929). Prior to testifying, Dr. Goldman asked [Claimant] if "those specific injections you had to your neck, were they helpful at all?" (Tr. 931). [Claimant] explained that she did not have a neck injury, she had a back injury, that the injections were to her low back, and they did not help even though she continued to undergo them. (Tr. 931-32). After Dr. Goldman's second reference to her neck injury, [Claimant] again reminded him "I didn't say I hurt my neck" and that she only hurt her back. (Tr. 932-33).

Doc. 47 at 15-23.

The ALJ found Claimant's impairments could reasonably be expected to cause her alleged symptoms, but concluded that her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible prior to January 1, 2007, for the reasons explained in this decision." R. 19. Thereafter, the ALJ proceeded to discuss the medical and opinion evidence, but did not articulate any specific reasons supporting his credibility determination, and failed to tie any of those medical records to any of Claimant's testimony concerning her disabling pain and functional limitations. R. 19-23.

The ALJ's credibility determination is boilerplate language commonly found in Social Security decisions. *See Howell v. Astrue*, Case No. 8:10-cv-2175-T-26TGW, 2011 WL 4002557, at *3 (M.D. Fla. Aug. 16, 2011) (noting that boilerplate credibility determinations are common) *report and recommendation adopted*, 2011 WL 3878365 (M.D. Fla. Sept. 2, 2011). This boilerplate credibility determination is, in many cases, followed by specific reasons undermining the claimant's testimony. *Id*. In this case, however, the ALJ failed to clearly articulate any specific reasons supporting his credibility determination. *See* R. 19-23. Thus, it is unclear what the ALJ relied on in reaching his credibility determination. The ALJ's failure to articulate specific reasons in support of his credibility determination frustrates the Court's ability to conduct a meaningful

review of the ALJ's decision. *See McKinney v. Astrue*, Case No. 8:08-cv-2318-T-TGW, 2010 WL 149826, at *3 (M.D. Fla. Jan. 15, 2010) (citations omitted). This failure is significant because Claimant's description of her limitations, if credited, would contradict the ALJ's RFC determination. Thus, the Court finds that the ALJ's decision is not supported by substantial evidence.

As noted above, the Commissioner argued that the ALJ sufficiently explained that Claimant was not entirely credible because the medical evidence as a whole did not support Claimant's allegations of disabling limitations. Doc. 47 at 40-41. However, the ALJ did not articulate specific reasons supporting his boilerplate credibility determination, but instead generally referred to his discussion of the medical and opinion evidence. R. 19-23. Thus, the Commissioner's argument essentially amounts to *post hoc* rationalization, because she attempts to offer reasons supporting the ALJ's boilerplate credibility determination that the ALJ did not specifically articulate in his decision. The Court will not affirm the ALJ's credibility determination based on such *post hoc* rationalization. *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (A court will not affirm based on a post hoc rationale that "might have supported the ALJ's conclusion.") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). Accordingly, the Court finds this case must be reversed so the ALJ may clearly articulate the reasons supporting his credibility determination.[6] *See Howell*, 2011 WL 4002557, at *5 (reversing due to ALJ's failure to provide a meaningful explanation for his credibility determination).

---

[6] This issue is dispositive and therefore there is no need to address Claimant's remaining arguments. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (no need to analyze other issues when case must be reversed due to other dispositive errors).

Further, although Claimant testified to her pain and limitations at each of the four hearings, it is undisputed that the ALJ only discussed in his decision Claimant's testimony from the fourth hearing. This is critical because, as set forth in the agreed-upon facts quoted in the foregoing paragraphs, Claimant testified to extensive pain and limitations in her first three hearings, each of which was temporally more proximal to the interim time period at issue than the fourth hearing. In fact, Claimant's testimony at the second hearing was on January 14, 2008, just two weeks after the end of the interim time period at issue. There, Claimant testified, in part,

> that standing half an hour makes her back pain worse, and then she has to switch positions. (Tr. 900). . . . she gets out of breath when walking less than half a mile. (Tr. 906). She is able to lift and carry, on a routine basis, "[m]aybe about 10 pounds" and can sit in one position for 30 minutes before having to alternate positions. (Tr. 909). She will alternate positions, alternate between hot and cold packs, and lie down to relieve pain from sitting. (Tr. 909-10).

Doc. 47 at 17. That testimony is inconsistent with the ALJ's RFC for the interim period, which allowed for light work. And as with Claimant's testimony from the first and third hearings, the foregoing claims of pain and limitations were not discussed by the ALJ in any manner whatsoever. Accordingly, the Court finds this case must also be reversed so the ALJ may consider Claimant's testimony at the first, second, and third hearings contained within the record of this case.

That said, at the conclusion of the ALJ's section of her decision discussing the RFC, the ALJ made the following comments regarding the "totality of the evidence":

> Overall, the totality of the evidence from 2003 until 2007 show that the claimant was not disabled and had the ability to work. The claimant received conservative medical treatment for her herniated discs, and in 2005 was taking over the counter medication for pain. Although the claimant testified that surgery was not an option, treatment providers such as Dr. Malik indicated that surgery could be an option but the claimant would not consider surgery. The claimant has only taken Tylenol with Codeine for the last six years according to her testimony. In addition, the claimant was able to move from Florida to Virginia in 2005, and then back to Florida in 2007. The ability to travel and move long distances supports the position that she is not disabled.

R. 23. Those comments by the ALJ summarize the two bases upon which the ALJ concluded that Claimant was not disabled during the interim period: the nature of Claimant's treatment (i.e., conservative medical treatment and an allegedly rejected surgical option) and the move from Florida to Virginia and back. Although the rejection of the surgery was couched as a rebuttal to Claimant's testimony on that point, the aforementioned paragraph discussed none of Claimant's testimony as it relates to her disabling pain or functional limitations.

Even if the Court were to consider both of the foregoing rationales as the ALJ's stated bases for discrediting Claimant's testimony, the Court finds that the ALJ's decision is still unsupported by substantial evidence. First, as to the move from Florida to Virginia and back, the record evidence is that the move related directly to Claimant's husband's loss of his job in Florida, move to Virginia to obtain employment, and subsequent loss of that employment in Virginia. There is no record evidence that Claimant took any part in the physical aspects of that move, other than travelling on one occasion from Florida to Virginia, and then travelling from Virginia to Florida two years later. Such travel can be accomplished even by one who is paraplegic, so, without record evidence, the Court cannot simply assume that the move required physical action by the Claimant that somehow belied a disability. To say that such a move is evidence of a lack of disability is completely baseless, and the Commissioner cites no support for that proposition, other than support for the general proposition that the ALJ can consider a claimant's daily activities. Doc. 47 at 42. Indeed, perhaps the Commissioner recognized this when attempting to argue that the ALJ did not "unduly rely on" Claimant's activities, including that move. *Id.* Further, while the Commissioner attempts to include "cleaning and housework" in those activities not "unduly" relied upon, the ALJ did not mention "cleaning and housework" in his calculus, and the Court will not accept the Commissioner's *post hoc* rationalization of the ALJ's decision. *Id.*

As to the ALJ's discussion of the alleged conservative nature of the medical treatment and alleged rejection of a surgical option, the problem with the Commissioner's rationale is that it ignores a significant portion of the record evidence as it relates to the interim period. At the heart of this conservative treatment argument is really a lack of medical treatment during the interim period: from about August 2005 through February 2007 there are no records of medical treatment. Yet the record evidence concerning that gap in treatment is that it was due to Claimant's lack of funds and medical insurance, and it tracks almost exactly the period of time that Claimant moved to Virginia with her husband as he sought a new job. Thus, the issue, as articulated by Claimant and supported by her consistent testimony and letters to the Appeals Council, is that she obtained conservative treatment, took over-the-counter medications, did not see medical practitioners, and declined surgery, in large part, because she could not afford it. But the ALJ failed entirely to address the issue of Claimant's financial ability to obtain treatment. And again, perhaps the Commissioner recognized this flaw in the ALJ's reasoning by asserting that the ALJ did not "unduly rely" on the nature of Claimant's treatment in discrediting her testimony. Doc. 47 at 41.

As asserted by Claimant, the ALJ must first consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or the failure to seek medical treatment." Doc. 47 at 38 (citing *See* SSR 96-7p, 1996 WL 374186 (S.S.A. 1996)). Indeed, "when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability," and "poverty excuses noncompliance.")); *see Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917,

921 (11th Cir. 2015) ("Where the ALJ did not rely significantly on the claimant's noncompliance, however, the ALJ's failure to consider evidence regarding the claimant's ability to afford her prescribed treatment does not constitute reversible error.") (citing *Ellison*, 355 F.3d at 1275).

Here, there was consistent record evidence that Claimant was unable to afford treatment during the interim period at issue, including Claimant's testimony at the first, second, and third hearings, as well as her two letters to the Appeals Council. Further, both Dr. Goldman and Dr. Owens, who testified at the fourth hearing, commented on the lack of medical records during the interim period, the poor nature of some of the existing medical records, and the overall lack of proper evaluation of Claimant. The conservative nature of Claimant's treatment – including her alleged non-compliance with a surgical recommendation – was the primary reason even arguably articulated by the ALJ to support the credibility decision in this case. Indeed, setting aside the boilerplate language concerning the medical evidence of record and Claimant's interstate move with her husband so he could find work, it was the sole basis for the ALJ's credibility decision. That credibility determination, supported as it was by an evaluation of the nature of Claimant's treatment, is inextricably intertwined with Claimant's financial ability to obtain treatment. Thus, the Court finds that it was error for the ALJ to fail to determine, or even consider, the record evidence that the conservative nature of Claimant's treatment – and her alleged non-compliance with a surgical recommendation – during the interim period was due to Claimant's inability to afford other treatment.

In making this finding, the Court is guided by the particular and unique facts of this case, which has languished for more than a decade-and-a-half in the administrative process. Further, as noted by Claimant, and as discussed at the hearing, there is no real indication in the ALJ's decision as to why Claimant was not deemed disabled during the interim period, and the chosen dates for

disability, and lack thereof, seem to be wholly arbitrary and divorced from any meaningful medical evidence. Claimant's disability stems from a car accident that occurred in September 2001. The Commissioner deemed Claimant disabled from September 2001 to June 13, 2003. The Commissioner also deemed Claimant disabled beginning on January 1, 2007. In relation to both those time periods, the Commissioner deemed Claimant's testimony to be credible in relation to her pain and limitations. However, during the three-and-a-half-year interim period from June 13, 2003 to December 31, 2006, the Commissioner deemed Claimant to *not* be disabled, and found her testimony to *not* be credible. The basis for that decision boils down to the ALJ's characterization of Claimant's treatment – its conservative nature and Claimant's alleged non-compliance with a surgical recommendation. But the ALJ failed to address Claimant's testimony and statements that she could not afford medical treatment during this interim time period. Thus, the Court finds that the ALJ's credibility determination is not supported by substantial evidence.

The Court finds that the foregoing issues are dispositive of this appeal, and, thus, there is no need to address Claimant's remaining assignments of error. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (no need to analyze other issues when case must be reversed due to other dispositive errors). That said, the Court finds that the errors identified above were compounded by Claimant's lack of counsel or a representative assisting her.

Accordingly, on remand, the ALJ is directed to allow Claimant an opportunity to have a representative assist her, and to obtain a clear waiver on the record if Claimant does not have such

a representative.[7]  The ALJ is also directed to consider all of the hearing transcripts and medical opinions contained within the record, including those supporting a disability finding prior to June 13, 2003.  Further, the ALJ is directed to consider Claimant's ability to afford treatment during the interim period at issue.  Finally, in the event the ALJ concludes that Claimant was not disabled during the interim period in question, then the ALJ must identify the evidence that supports his or her finding that Claimant's condition improved after June 12, 2003.

## V.    Remedy

Claimant requests that this case be remanded for an award of benefits.  Doc. 47 at 53-55.  The Court may remand a social security disability case for an award of benefits where the Commissioner has already considered the essential evidence and it establishes disability beyond a doubt, *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993), or where the claimant has suffered an injustice, *see Walden*, 672 F.2d at 840.  It is not clear under which of these bases Claimant seeks a remand for an award of benefits.  Doc. 47 at 53-55.  Although Claimant is right to be frustrated with the length of these administrative and judicial proceedings, and there is no doubt that this case has wound its way through the administrative system for over fifteen years, the Court is not persuaded that remand for benefits is the appropriate remedy.  Here, Claimant has obtained multiple, partially-favorable decisions, is appealing a partially favorable decision, and the Commissioner has already determined that Claimant became disabled for two periods.  This appeal is limited to a finite three-and-a-half year period.  There is no indication that the Commissioner has simply litigated this case without regard to Claimant's claims – to date, the remands in this case have come from the actions of the Commissioner, both at the Appeals Council level and by

---

[7] The Court is not finding error in relation to the waiver of counsel issue raised by Claimant, but, given the history of this case, the ALJ should obtain a clear waiver on the record if Claimant appears at a hearing on remand without a representative assisting her.

seeking a voluntary remand from this Court. Thus, at least up to this point, given the Commissioner's attempts to address errors along the way and given the partially favorable decisions on voluntary remand, the Court cannot say that the actions of the Commissioner have resulted in an injustice to Claimant. Further in light of the evidence in the record, the Court finds that the essential evidence does not establish disability beyond a doubt. Therefore, this case should be reversed and remanded for further proceedings so the ALJ may address the issues discussed in this decision.

VI. **Conclusion**.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and

2. The Clerk is directed to enter judgment for Claimant and close the case.

**DONE AND ORDERED** in Orlando, Florida on March 9, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties